IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN JEFFREY RICHARD, | § | |
|     Petitioner | § | |
| | § | |
| VS. | § | C.A. NO. C-04-609 |
| | § | |
| DOUG DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE–INSTITUTIONAL DIVISION, | § | |
|     Respondent | § | |

### MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se* and *in forma pauperis,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. §§ 2241 and 2254 on November 12, 2004 (D.E. 1). Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) his counsel substitute did not give him notice of the hearing and so he was not allowed to attend the hearing, call witnesses or present documentary evidence on his behalf; (2) his counsel substitute purposefully did not give him notice of the hearing because she was retaliating against him because she had been required to dismiss an earlier disciplinary case without imposing any punishment. Respondent filed a motion for summary judgment on January 28, 2005 to which petitioner responded on May 16, 2005 (D.E. 12, 21).

### I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 2241, 2254. Petitioner was incarcerated in the Corpus Christi Division of the Southern District of Texas when he filed his petition. Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

## II.  BACKGROUND

Petitioner currently is serving a 50-year sentence for possession of cocaine (D.E. 1, Commitment Inquiry).  He does not complain about his holding conviction, but challenges the results of a disciplinary hearing.  In disciplinary case 20040335640 petitioner was accused and found guilty of being in front of 6 building 7 chow hall without authorization to be there (Disciplinary Hearing Records, at 1).[1]

The disciplinary report and hearing record states that petitioner was found guilty based on the charging officer's report and an inter-office communications form where an officer stated that he saw petitioner out of place in front of number 7 chow hall on July 28, 2004 at approximately 6:10 p.m.  (Id. at 8).  In the offense report, the charging officer, S. Acuna, stated that at that same date and time the kitchen staff received a call saying that there were several offenders in front of 7 chow hall.  A check of the area revealed there were several offenders there, but they were not kitchen offenders.  Petitioner was there and he did not have authorization to be there (Id. at 5).

In the preliminary investigation report, completed on July 29, 2004, petitioner stated that he was there because Lt. Garcia told him to wait there (Id. at 6).  On the service investigation worksheet, Counsel Substitute Pundt noted that petitioner chose not to make a statement at the time of service.  Pundt also noted that she did not call the charging officer because petitioner failed to present non-frivolous evidence (Id. at 3-4).  Also included in the records was a form, "Waiver of Right to Attend Disciplinary Hearing," signed by Pundt.  On the form it said that on July 30, 2004 at 10:41 a.m. Pundt contacted petitioner and asked him if he wanted to attend his disciplinary

---

[1] The records submitted by respondent regarding petitioner's disciplinary hearing and the grievances he filed are located at D.E. 14.

hearing and petitioner shook his head, indicating "no." On the space for petitioner to sign it is written, "Declind (sic) to sign." (Id. at 7).

Petitioner was found guilty and punished with the loss of recreation and commissary privileges for 45 days and the loss of 20 days of good time. In addition, his line class was reduced from L1 to L2 (Id. at 1).

On August 9, 2004 petitioner filed a Step 1 grievance (number 2004221488) complaining that counsel substitute Pundt had failed to give him notice of the hearing. In the grievance he stated that he was not present when Pundt went to his cell to serve him with the notice about the hearing and that he never talked to her or any other counsel substitute for the disciplinary hearing. He claims that Pundt wrote on the form that petitioner refused to sign it because she knew he would be found guilty if he were not present to defend himself. Petitioner claims that Pundt was retaliating against him because he had "admonished" her in an earlier incident when she had tried to bring two separate disciplinary cases against him for one infraction. Pundt was forced to dismiss one of the disciplinary cases against petitioner (Disciplinary Grievance Records at 11-12).

Petitioner received a response to the grievance from Warden Castillo on August 25, 2004. Castillo told petitioner that disciplinary case number 20040335604 had been reviewed and it appeared that Pundt took every reasonable step to provide him with the opportunity to participate in the discovery process as well as the hearing. Castillo added that because petitioner had refused to participate, the disciplinary case and results would stand as rendered (Id. at 12).

Petitioner submitted a Step 2 grievance, which was dated by him on August 27, 2004 but was not marked received until October 15, 2004. In the Step 2 grievance petitioner reiterated his argument that he did not receive notice of the hearing and so was not allowed to attend the hearing

and present evidence (Id. at 9-10). The Step 2 grievance was returned to petitioner on November 3, 2004 with a box checked that the grievable time period had expired (Id. at 9-10).

Petitioner submitted another Step 1 grievance (number 2004222029) on August 4, 2004, once again complaining that he had not received notice of the hearing and also that Pundt was acting with a retaliatory motive (Id. at 7-8). The grievance was returned to petitioner with a note that it was redundant and that petitioner should refer to grievance number 2004221448 for disposition (Id. at 8).

Petitioner filed a Step 2 grievance and attached statements from four inmate witnesses who said that on July 30, 2004 at approximately 10:30 a.m. Pundt went to petitioner's cell and asked for him. He was not there and Pundt signed a form and handed it to officer De Los Santos (Id. at 3-6). The grievance was returned to petitioner on October 1, 2004 with a checked box indicating that he had included inappropriate or excessive attachments (Id. at 1-2).

Respondent argues that petitioner was given notice and an opportunity to appear by the council substitute, but declined to do so. Respondent also argues that petitioner's loss of 20 days of good time is *de minimis* and insufficient to trigger due process concerns. In addition, respondent argues that petitioner's claim of retaliation is not supported by any facts or documentary evidence. Respondent concedes that petitioner exhausted his administrative remedies.

Petitioner argues that he did not receive notice of the hearing and that he did not indicate to anyone that he did not want to attend the hearing. In addition, petitioner argues that the counsel substitute did not conduct a proper investigation of the charges and that no informal resolution of the charge was attempted. He also argues that his grievances pertaining to the disciplinary hearing

were not processed properly.  Finally, petitioner argues that due process protections extend to his time-earning status.

### III.   APPLICABLE LAW

**A.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  Sandin, 515 U.S. at 486, 115 S.Ct. at 2301.  Sandin involved an inmate being placed in administrative segregation, a punishment generally considered much harsher than the removal of privileges.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  Id.

5

**(1) Time Earning Status**

To the extent petitioner seeks reinstatement of his line class, he has not raised a due process concern.  Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests."  Luken v. Scott, 71 F.3d 192 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996).  "'Prisoners have no protectable property or liberty interest in custodial classifications.'"  Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)).  See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).  Accordingly, petitioner is not entitled to habeas corpus relief based on his line class status.

**(2)  Loss of Good Time**

Petitioner also seeks reinstatement of his lost good time.  To the extent petitioner contends that the loss of good time affects his parole eligibility he fails to state a basis of relief.  "In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole. . . . In fact, we have expressly held that there is no constitutional expectancy of parole in Texas."  Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997).  Without

such an expectation, petitioner is not entitled to due process following the loss of good time credits insofar as the loss affects his eligibility for parole.

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division.  Id., 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)).  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release.  Malchi v. Thaler, 211 F.3d 953, 957-958 (5th Cir. 2000).  The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson v. Johnson, 242 F.3d 534, 536, n. 1 (5th Cir. 2001).  However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does.  Id. at 536. Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision.  Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Petitioner in this case is eligible for release to mandatory supervision (D.E. 12, Ex. A, Commitment Inquiry).  Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The inmate is entitled to the following process:  (1) He must receive written notice of the charges;  (2) He must be allowed to

call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979. "Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are in fact." Id., 418 U.S. at 564, 94 S.Ct. at 2978.

Respondent asserts that Counsel Substitute Pundt went to petitioner's cell to give him notice of the hearing and that petitioner shook his head "no" when she asked him if he wanted to attend the hearing. Petitioner counters that he did not receive written notice of the hearing and did not decline to attend the hearing. Accordingly, a fact issue exists regarding whether petitioner received notice of the hearing and an opportunity to attend it.

Nevertheless, a court will not grant a writ of habeas corpus in every instance in which the state has failed to conform to constitutional requirements. Before a court will issue a writ of habeas corpus, the petitioner must demonstrate that he has suffered some prejudice as a result of the alleged constitutional violation. Simpson v. Ortiz, 995 F.2d 606, 609 (5th Cir. 1993)(citing Brown v. Collins, 937 F.2d 175, 182 (5th Cir. 1991) and Clark v. Maggio, 737 F.2d 471, 475-76 (5th Cir. 1984)). In this case, petitioner has not made an allegation of prejudice regarding his exclusion from the hearing. In his pleadings he has not denied that he was out of place without authorization, and he has not described any evidence which he would have submitted to the hearing officer had he been allowed to attend the hearing. Without an allegation of prejudice, petitioner cannot make out a claim that he is entitled to habeas corpus relief for a violation of his constitutional rights.

Petitioner also complains that an adequate investigation was not conducted in his case and that he was not allowed to resolve the underlying incident in an informal manner. Assuming both allegations are true, such violations of internal rules do not rise to the level of a constitutional violation. As discussed above, <u>Wolff</u> sets forth the due process requirements of a prison disciplinary hearing and investigation of the charges and resolving the matter internally are not included in the constitutional guarantees. Accordingly, petitioner received the process he was due in the disciplinary hearing proceeding and summary judgment should be entered for respondent.

### C.  Claim Relating to Grievance Procedure

Petitioner also complains that respondent mishandled his grievances and erred by not allowing him to attach evidence to one of them. Even if true, this assertion does not rise to the level of a constitutional violation. See <u>Myers v. Klevenhagen</u>, 97 F.3d 91, 94 (5th Cir. 1996)(Prison official's failure to follow prison's own policies, procedures, or regulations does not constitute violation of due process, if constitutional minima are nevertheless met). Accordingly, petitioner fails to state a claim based on these facts.

### D.  Certificate of Appealability

The Supreme Court has stated that the showing necessary for a Certificate of Appealability ("COA") is a substantial showing of the denial of a constitutional right. <u>Hernandez v. Johnson</u>, 231 F.3d 243, 248 (5th Cir. 2000)(citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-484 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. See <u>Clark v. Johnson</u>, 202 F.3d 760, 763 (5th Cir. 2000). Specifically, where a

district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack, 529 U.S. at 484.  A determination of the merits of a claim should not be part of the decision to issue a COA.  Rather, it is the debatability of the underlying constitutional claim, rather than its resolution, that controls whether a COA should issue.  Miller-El v. Cockrell, 537 U.S. 332, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## IV.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment (D.E. 12) be granted and petitioner's cause of action for habeas corpus relief be dismissed.  It is further recommended that should petitioner seek a Certificate of Appealability, that it be denied.

Respectfully submitted  this 2nd day of June, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).